UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY JO JASKIEWICZ,

                    Plaintiff,                          Case No. 15-cv-10265

v.                                          Honorable Thomas L. Ludington

ST. MARY'S OF MICHIGAN,

                    Defendant.

_____/

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT, DISMISSING COUNT I OF COMPLAINT WITH PREJUDICE, AND DISMISSING COUNT II OF COMPLAINT WITHOUT PREJUDICE**

Plaintiff Mary Jo Jaskiewicz filed suit against her former employer, Defendant St. Mary's of Michigan, alleging that they terminated her in violation of the federal Family and Medical Leave Act, 29 U.S.C. § 2601*ff*, and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101*ff*. Pl.'s Compl., ECF No. 1. Jaskiewicz suffered a permanent and debilitating back injury that forced her to take FMLA leave and employer-provided leave. During that time, because she was unable to return to her former nursing position, she applied for other positions within St. Mary's hospital. According to Jaskiewicz, St. Mary's failed to hire her for two positions she applied for and for which she was qualified. She claims that St. Mary's refusal to hire her constitutes retaliation for taking FMLA leave and discrimination based on the fact that she is disabled.

St. Mary's has moved for summary judgment on both of Jaskiewicz's claims. It argues that she is unable to establish a prima facie case of FMLA retaliation and cannot demonstrate that she was discriminated against on the basis of her disability or that St. Mary's failed to

accommodate her disability. Jaskiewicz cannot establish a prima facie case of FMLA retaliation because the adverse employment actions she suffered are too attenuated from her FMLA leave. As a result, her FMLA claim must be dismissed. St. Mary's motion for summary judgment will be granted in part. Jaskiewicz's state law claim of disability discrimination, although more facially meritorious than her FMLA claim, will be dismissed without prejudice to it being pursued in state court.

## I.

Mary Jo Jaskiewicz is a resident of Bay County, Michigan. She worked as a registered nurse with Defendant St. Mary's for more than thirty years. Defendant St. Mary's is a domestic nonprofit corporation that operates a hospital in Saginaw, Michigan.

## A.

Jaskiewicz began working for St. Mary's on June 7, 1982. Shortly before taking leave, Jaskiewicz worked on 4 North, the name used to describe a specific ward in the hospital. Jaskiewicz initially started on this floor with St. Mary's. But over the years, as units have moved within the hospital she worked temporarily with other units on other floors. She began her most recent assignment on 4 North on June 11, 2012.

While assigned to 4 North, Jaskiewicz worked primarily with oncology patients. The job description for Jaskiewicz position contains three "working conditions/physical requirements." They are:

- Contact with patients under a wide variety of circumstances including but not limited to exposure to the risk of bloodborne diseases and to unpleasant elements such as serious accidents, injuries and illnesses; subject to unpredictable, emergent, or crises situations; occasionally subject to irregular hours; and the pressure associated with answering multiple patient/physician calls and inquiries.

- ▪ Extensive standing and walking; lifts, positions, pushes and/or transfers patients; carriers and transports equipment and supplies; and considerable reaching, stooping bending, kneeling, and crouching.

- ▪ May require irregular work hours.

Ex. 3 (sic throughout), Pl.'s Resp., ECF No. 14-4. Nurses in Jaskiewicz's unit worked twelve hour shifts for the whole time she was assigned to that unit. Jaskiewicz's shift lasted from 7 p.m. to 7 a.m. There were roughly three to four other registered nurses on the night shifts with Jaskiewicz. Each of those nurses was assigned roughly five to six patients each, depending on the number of admitted patients.

## B.

Jaskiewicz hurt her back while at work in January of 2011. She suffered a disc herniation. For two weeks, she worked with restrictions that included a limitation on lifting. During that period, Jaskiewicz did not do any patient lifting. At the end of the two week period, she continued working without restriction.

Jaskiewicz reinjured her back when lifting a box at home on April 10, 2013. She saw a doctor the next day. Her doctor provided an off-work note that stated Jaskiewicz was "to be off work next week 4-15-13 through 4-19-13." Ex. 4, Pl.'s Resp., ECF No. 14-5. Jaskiewicz's doctor went on to explain that she "may return to work 4-20-13 with 20 lb weight restriction X 2 weeks." *Id*. (sic throughout). Jaskiewicz's supervisor received the doctor's note on April 22, 2013. Jaskiewicz and her supervisor also spoke that day and Jaskiewicz was informed that the decision of whether Jaskiewicz's restrictions could be accommodated would be made at the corporate level.

On April 24, 2013, Jaskiewicz and her supervisor spoke again. Jaskiewicz's supervisor told her that the hospital could not accommodate Jaskiewicz's restrictions. Her supervisor advised her that because of her restrictions and St. Mary's inability to accommodate them,

Jaskiewicz would need to take a leave of absence. Jaskiewicz's supervisor put her in touch with HR, which provided Jaskiewicz with FMLA documentation.

### C.

Jaskiewicz's physician completed an FMLA Certification of Health Care Provider form on April 29, 2013. The form stated that Jaskiewicz was unable to perform the transfer of patients and unable to lift more than twenty pounds.  Following the filing of the physician's certification, Jaskiewicz went on FMLA leave. Her leave lasted the statutory maximum twelve weeks. Near the end of her twelve weeks of FMLA leave her restrictions remained in place and she was unable to return to work. Her treating physician advised her that because of her ongoing restrictions she may need to explore new job opportunities that do not involve lifting. Her FMLA leave ended on July 4, 2013.

Since Jaskiewicz could not return to work after her FMLA leave, she needed to begin taking personal leave. She submitted a leave request on July 11, 2013. St. Mary's approved her request on July 15, 2013.

Jaskiewicz visited her physician again in October of 2013 and once again her restrictions were continued and she was advised to seek alternative employment. Her physician also provided medical information on Jaskiewicz's condition to St. Mary's long term disability insurance provider. That information included a representation that Jaskiewicz was "totally disabled" and listed a series of restrictions which included not moving more than twenty pounds and only being capable of performing an office job for eight hours per day.

After her physician imposed these restrictions, Jaskiewicz contacted St. Mary's and informed them of her restrictions. She sought the possibility of returning to work on reduced hours to accommodate her restrictions. St. Mary's human resources representative informed

Jaskiewicz that she should look for other open positions at St. Mary's because her former position require twelve hour shifts. The next day, Jaskiewicz applied for a new job.

**D.**

Jaskiewicz first applied for the position of Performance Improvement Specialist. She filed the application on November 14, 2013. The position posting contained the following job description and requirements:

> RN/BSN preferred. Reports to the Director of Quality Management and is responsible for coordinating the activities of the Performance Improvement program at St. Mary's of Michigan to facilitate achieving the goals and objectives of the Hospital-Wide Performance Improvement Committee. Organizes and presents summaries of hospital wide Performance Improvement initiatives, activities, and results to the Hospital-Wide Performance Improvement Committee. This is a non-patient care position, but may have contact with persons of all age groups. Current licensure as Registered Nurse in Michigan. CPHQ desirable. 5 years of progressive clinical experience. 2 or more years in management.

Ex. L, Def.'s Mot. Summ. J., ECF No. 12-13. Jaskiewicz believed she was qualified for the position. She wrote on her application that she has "been off work since April 2013 for medical reasons." Ex. 14, Pl.'s Resp., ECF No. 14-15. She noted that she "[n]ow require[s] an 8 hour position which does not require direct patient care, as per advise [sic] of physician." *Id.* Jaskiewicz did not receive an interview.

Jaskiewicz visited human resources on December 2, 2013 to provide St. Mary's with a note from her physician that stated Jaskiewicz was able to return to work on December 3, 2013. The return-to-work note retained her eight-hour workday restriction and her twenty-pound lifting restriction. While at human resources she discussed the Performance Improvement Specialist position she had applied for. During that discussion she was advised "to go ahead with other applications." Pl.'s Resp. Br. 9, ECF No. 14.

Jaskiewicz reviewed additional online job postings as a result of this advice and noticed that the posting for the Performance Improvement Specialist position had been removed.

Jaskiewicz called human resources and spoke with a secretary about the removal of the Performance Improvement Specialist posting. The secretary informed Jaskiewicz that the posting was removed because St. Mary's decided it would select someone from the position out of those who had already applied. Jaskiewicz heard nothing about the position until she again contacted human resources and learned that the position had been filled. The position was filled with a qualified applicant but Jaskiewicz believes the applicant chosen had less experience than her. St. Mary's hiring manager, who made the hiring decision for the Performance Improvement Specialist position, testified that Jaskiewicz was not, despite her belief, actually qualified for the position. That is because Jaskiewicz did not have the requisite progressive clinical experience, which required having had a permanent assignment to critical care, intensive care, or surgical units. Jaskiewicz was only ever assigned to such units as temporary coverage. To the contrary, the nurse selected for the position had ten years of experience in such units.

### E.

Jaskiewicz's next application for another position with St. Mary's came on July 12, 2014, over one year after her FMLA leave had ended. She applied for the position of Physician Office Nurse in the Medical Oncology Department. On her application Jaskiewicz wrote under "Reason for Transfer Request" that she has "been on Medical Leave of Absence/Unable to return to my former job position/Seeking alternate employment." Ex. 18, Pl.'s Resp., ECF No. 14-19. The posting for the position did not list a schedule of working hours per day required of employees in the position. Jaskiewicz did not receive an interview for the position.

On August 7, 2014, Jaskiewicz reached out to human resources and again spoke with the same secretary she had previously. The secretary told Jaskiewicz that the Physician Office Nurse

position had been filled internally.[1] Jaskiewicz called the secretary back on August 11, 2014 and asked why she did not receive an interview. The secretary referred Jaskiewicz to Ashlee Adelberg, a human resources consultant that screened applicants for the Physician Office Nurse position. Ms. Adelberg explained that she did not select Jaskiewicz for an interview because of the significant difference in pay between Jaskiewicz last position as an RN on 4 North and the Physician Office Nurse position. In her experience, Ms. Adelberg told Jaskiewicz, nurses applying for positions with significant reductions in pay, like the reduction Jaskiewicz would have experienced, often withdraw from consideration once they are aware of the pay difference.

In her deposition, Ms. Adelberg detailed her applicant screening process. She stated that her first step is to take a look at the current rate of pay for internal transfers relative to the position they have applied for. If the internal transfer "had been at the high level of the R.N. [pay] scale" she would not forward his or her application to the hiring manager. Ex. N 12, Def.'s Mot. Summ. J., ECF No. 12-15. It was her experience that "with these types of positions . . . we'll go through applications, we'll do interviews, the manager will, and make offers to R.N. candidates who are at [the higher end of the pay scale], and they won't accept based on the pay rate difference." *Id*. Ms. Adelberg testified that she cannot recall whether she read Jaskiewicz's application or just proceeded to eliminate her based on her prior pay. She did state that it was normally not her practice to read through an entire application before screening an internal applicant based upon their pay rate. Jaskiewicz's explanation that she was applying for the position because she needed a job since she had been off work was on the first page of her application.[2] She would have taken an hourly pay cut of over $10.00 per hour were she to accept

---

[1]    Jaskiewicz would also be considered an internal candidate for the position, despite being on leave.

[2]    It continued onto the second page.

the Physician Office Nurse position. The nurse hired to fill the position took an hourly pay cut of $1.20 per hour.

## F.

On August 12, 2014, one day after Jaskiewicz spoke with Ms. Adelberg, St. Mary's issued her a letter stating that her leave had been exhausted and that, as a result, her employment was terminated. St. Mary's provides for leaves of absence up to one year. Jaskiewicz's one year of leave had expired.

Jaskiewicz filed her complaint on January 22, 2015.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.

The Sixth Circuit has recognized two discrete theories of recovery under the FMLA: (1) the "interference" theory arising under § 2615(a)(1), and (2) the "retaliation" theory arising from § 2615(a)(2). *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). Jaskiewicz pleads only a retaliation claim under the FMLA. The central issue raised by the retaliation theory is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id*. (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). In other words, an employer's intent is relevant only in retaliation claims because those claims "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id*. (citing *Edgar*, 443 F.3d at 508) (emphasis original).

To establish a *prima facie* retaliation claim, a plaintiff must establish that:

(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was causal connection between the protected FMLA activity and the adverse employment action."[3]

*Killian*, 454 F.3d at 556 (citing *Arban*, 345 F.3d at 404). Defendant does not contest that Plaintiff engaged in protected FMLA activity; that it knew of that activity; and that Plaintiff suffered an

---

[3]     The Sixth Circuit "applies the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims under the FMLA." *Edgar v. JAC Products, Inc.* 443 F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001) and *Rodriguez v. Ford Motor Co.*, 382 F. Supp. 2d 928, 933 (E.D. Mich. 2005)) (internal citations omitted).

adverse employment action. Defendant does contest Jaskiewicz's ability to prove that there was a causal connection between her protected activity and any adverse employment action she claims.

To satisfy the final prong of her prima facie case, Jaskiewicz must demonstrate a causal connection between her protected activity and the adverse employment actions she was subject to. Defendant asserts that Jaskiewicz cannot establish the final element of her prima facie case: that there was a causal connection between her FMLA leave and the adverse employment actions she was subject to.  To satisfy this element, a plaintiff must present sufficient evidence to "raise [an] inference that her protected activity was the likely reason" for the adverse action.  *Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 387 (6th Cir. 2006) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990).  However, "[t]he burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there [was] a causal connection between the retaliatory action and the protected activity."  *Cutcher v. Kmart Corp.*, 364 F. App'x 183, 190 (6th Cir. 2010).

Jaskiewicz concedes that she has no evidence of a connection other than temporal proximity.  Although temporal proximity alone is generally insufficient to establish circumstantial evidence of a causal connection, the Sixth Circuit has clarified that, in some circumstances, temporal proximity alone can suffice to show a causal connection in a retaliation case: "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of

retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) (analyzing temporal proximity under the ADEA and Elliot-Larsen Civil Rights Act).[4]

With respect to claims for FMLA retaliation, the Sixth Circuit has held that a span of less than three months is sufficient to create an inference of a causal connection. *See Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two."); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that a three-month time lapse between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work established a causal connection at the prima facie stage). Here, Jaskiewicz claims three different adverse employment actions and alleges that all three are close enough in time to her FMLA leave to satisfy her prima facie case.

## A.

Jaskiewicz claims that St. Mary's did not hire her for two positions for which she was qualified. The timing of these two failures to hire, without more, does not establish a causal nexus with Jaskiewicz's FMLA leave. Both failures to hire were too far removed from Jaskiewicz's FMLA leave to establish, without more, a causal connection between her leave and the actions without any evidence of FMLA discrimination on the part of St. Mary's. Jaskiewicz took FMLA leave from April 10, 2013 to July 4, 2013. She applied for the Performance Improvement Specialist position on November 14, 2013, four months after her FMLA leave ended. She applied for the Physician Office Nurse position on July 12, 2014, more than a year after her FMLA leave ended. St. Mary's failure to hire her for either position came too long after

---

[4]   The Sixth Circuit relies on other employment discrimination law to fill the gaps in FMLA case law. *See, e.g.*, *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696 (6th Cir. 2008) (relying on ADA, ADEA, and Title VII cases); *Bryson*, 498 F.3d at 561 (same).

the end of Jaskiewicz's protected activity to constitute a per se causal connection in support of her prima facie case.

Jaskiewicz seeks to overcome this lack of a causal connection by invoking 29 C.F.R. § 825.700. That provision states that an employer must abide by any program or plan it has in place "that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700. Jaskiewicz argues that because she continued on a medical leave of action after her FMLA leave, the legal protections of her FMLA leave somehow extend by the force of 29 C.F.R. § 825.700. But she offers no authority in support of that proposition. Indeed, the law is to the contrary. The Sixth Circuit has explicitly stated:

> There is no regulatory or statutory authority to impose upon an employer the obligation to provide FML in excess of the 12–week period under these circumstances. Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA.

*Coker v. McFaul*, 247 F. App'x 609, 620 (6th Cir. 2007) (internal quotation marks and citations omitted). Jaskiewicz's continuation on non-FMLA did not extend her FMLA protections beyond the end of her leave on July 4, 2013. As a result, an inquiry into the temporal connection between St. Mary's decisions not to hire Jaskiewicz for two posted positions must be related back to the time in which her FMLA leave ended. Jaskiewicz cannot demonstrate the requisite temporal proximity between her FMLA leave and the failures to hire to establish a causal connection between the two.

### B.

Jaskiewicz's also makes a claim that she was not provided sufficient information about the possibility of taking intermittent FMLA leave. She argues that St. Mary's violated the FMLA by telling her that she had to take continuous FMLA leave and not informing her that she could

return intermittently. According to Jaskiewicz, she told St. Mary's that she could perform some of the work that her old job demanded as long as she had nursing assistants help her move patients.

It is not clear how this claim fits into Jaskiewicz's claim of FMLA retaliation. First, the claim that St. Mary's withheld pertinent information about Jaskiewicz's FMLA rights is not a claim of FMLA retaliation. Rather, it is a claim of FMLA interference. Jaskiewicz did not plead an FMLA interference claim. The lack of an interference claim in her pleading is fatal to her ability to claim FMLA interference at the summary judgment stage. See *Hoff-Pierre v. Univ. Hosp., Inc.*, 523 F. App'x 313, 314 (6th Cir. 2013); *Huffman v. Speedway LLC*, Case No. 13-CV-12453, 2014 WL 5817321, at *1 (E.D. Mich. Nov. 10, 2014).

Furthermore, there is no unilateral right to intermittent leave under the FMLA. The FMLA states that leave "shall not be taken by an employee intermittently or on a reduced leave schedule unless the employee and the employer of the employee agree otherwise. 29 U.S.C. § 2612(b)(1). *See also Maynard v. Town of Monterey, Tennessee*, 75 F. App'x 491, 493 (6th Cir. 2003) (upholding denial of summary judgment to plaintiff who claimed he was improperly denied FMLA leave). Thus, Jaskiewicz's claim that she would have taken intermittent leave if she knew it was available is unpersuasive. She had no right to such leave.

**IV.**

Having concluded that Jaskiewicz's federal claim is to be dismissed, her claim under state law for violation of the Michigan Persons with Disabilities Civil Rights Act must now be addressed.

The Court has supplemental jurisdiction over these state law claims because they form part of the same controversy as Jaskiewicz's federal claim. *See* 28 U.S.C. § 1367(a). However, this Court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id*. at 863. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The issues presented, which may more directly implicate Jaskiewicz's physical impairments than her temporally attenuated FMLA claim, are more appropriate for resolution by a state court. Therefore, the Court declines to exercise its supplemental jurisdiction. Jaskiewicz's supplemental state law claim will be dismissed without prejudice.

## V.

Accordingly, it is **ORDERED** that Defendant St. Mary's of Michigan's Motion for Summary Judgment, ECF No. 12, is **GRANTED in part**.

- 14 -

It is further **ORDERED** that Count I of Plaintiff Mary Jo Jaskiewicz's Complaint, ECF No. 1, is **DISMISSED with prejudice**.

It is further **ORDERED** that Count II of Plaintiff Mary Jo Jaskiewicz's Complaint, ECF No. 1, is **DISMISSED without prejudice**.

Dated: February 8, 2016                           s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 8, 2016.

                                                  s/Michael A. Sian
                                                  MICHAEL A. SIAN, Case Manager