UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY JO JASKIEWICZ,

                       Plaintiff,                      Case No. 15-cv-10265

v.                                         Honorable Thomas L. Ludington

ST. MARY'S OF MICHIGAN,

                       Defendant.

_____/

**ORDER DENYING MOTION FOR RECONSIDERATION**

Plaintiff Mary Jo Jaskiewicz has filed a motion for reconsideration. Pl.'s Mot. Recons'n, ECF No. 21. She argues that the Court committed two palpable defects in its February 8, 2016 Opinion and Order Granting in Part Defendant's Motion for Summary Judgment. Jaskiewicz claims that the Court erroneously applied Sixth Circuit law governing when a temporal nexus between protected activity and an adverse employment action can, without more, establish a jury question concerning causation. She also claims that the Court incorrectly evaluated her claims related to Defendant St. Mary's of Michigan decision to deny Jaskiewicz intermittent leave under the Family and Medical Leave Act ("FMLA"). Jaskiewicz's motion will be denied.

**I.**

Jaskiewicz does not dispute the facts as conveyed in the Court's February 8, 2016 Opinion and Order. Those facts will be adopted as though fully recited herein. See Feb. 8, 2016 Op. & Order, ECF No. 19.

Some additional facts warrant discussion. When Jaskiewicz first hurt her back she was placed on a lifting restriction by her treating physician. Jaskiewicz's physician restricted her

from moving or lifting any weight in excess of twenty pounds. Otherwise, her physician said she could return to work. Ex. D, Def.'s Mot. Summ. J., ECF No. 12-5. Jaskiewicz met with her manager, Cindi Engelke, after receiving the doctor's note that allowed her to return to work with lifting restrictions. Ms. Engelke informed Jaskiewicz that St. Mary's could not accommodate those restrictions and referred her to Kelly Weigold, a human resources representative. Ms. Weigold discussed the availability of leave under the FMLA.

At that point, Jaskiewicz requested that her FMLA leave be intermittent so that she could return to work with her restrictions, despite already being informed that St. Mary's could not accommodate those restrictions. Ms. Weigold responded that Jaskiewicz's leave would need to be consecutive and that Jaskiewicz could only utilize intermittent leave if she was able to return to work and then needed additional time off. Jaskiewicz explained in her deposition that she envisioned utilizing intermittent leave in conjunction with an accommodation whereby other nurses and nursing assistants would move and transfer patients so that she did not need to perform lifts in excess of twenty pounds. Even though St. Mary's stated it could not accommodate her restrictions, Jaskiewicz mentioned a nurse, Regina, who worked on her floor during a different shift and had other individuals lift patients for her because of an injury. She could not remember any other specifics of Regina's arrangement: whether it was an accommodation put in place by St. Mary's, what the nature of her injury was, or any of her certified medical restrictions.

Jaskiewicz did not begin intermittent FMLA leave and instead took twelve continuous weeks of FMLA leave. At the end of her FMLA leave she transitioned to personal leave. When she exhausted her year of personal leave and could not return to work based on her lifting restriction and a subsequent eight-hour workday restriction, her employment was terminated.

## II.

A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997).

## III.

Jaskewicz makes two claims in her motion for reconsideration. First, she argues that the Court improperly applied the Sixth Circuit's rule on determining when the temporal nexus between a protected activity and an adverse employment action can establish a prima facie causal connection. Second, she argues that the Court improperly applied the law concerning intermittent FMLA leave and incorrectly analyzed her argument about how St. Mary's denial of Jaskiewicz's intermittent leave request affects her FMLA retaliation case.

## A.

Jaskiewicz first claims that the Court erred in assessing the temporal connection between her adverse employment actions and her protected activity. She cites to *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), which explains that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." She emphasizes that the relevant temporal connection is between when the adverse employment action occurs and when "an employer learns of a protected activity." In her case, she argues, the individuals reviewing her

job applications learned of her protected activity at the time they picked up her application because the applications explained that she was on a medical leave of absence. She asserts that as a result, the temporal connection between the failures to hire by St. Mary's and the hiring agents was less than one month.

Jaskiewicz's argument, while a correct explanation of the law, proves too much on the facts. "An employment decision cannot be caused by protected activity if the decision-maker did not know about the protected activity." *Crane v. Mary Free Bed Rehab. Hosp.*, Case No. 15-1358, 2015 WL 8593471, at *7 (6th Cir. Dec. 11, 2015). Jaskiewicz indicates that her applications for the two internal nursing positions explained that she had been on a medical leave of absence. But this does not mean that the application reviewers were aware that any part of that absence was FMLA leave. Where the decision-maker does not know of an employee's protected activity, that decision-maker cannot retaliate against the employee for that protected activity. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 880 (6th Cir. 2013) (holding that where four of five members of review committee were unaware of protected activity, termination decision was not retaliatory). *See also Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 408-09 (6th Cir. 2014) (concluding that terminating doctors had no knowledge of nurse's protected activity and thus finding summary judgment proper).

There is no evidence that either of the hiring agents for the two positions were informed by St. Mary's that Jaskiewicz had taken FMLA leave. Thus, the only way they could have been informed of her leave was through her application. But neither application specifies that Jaskiewicz's leave was in part FMLA-related. Her November 14, 2013 application stated simply: "Have been off work since April 2013 for medical reasons. Now require an 8 hour position which does not require direct patient care, as per advise [sic] of physician." Ex. 14, Pl.'s Resp.,

- 4 -

ECF No. 14-15. Her July 12, 2014 application stated: "Have been on Medical Leave of Absence/Unable to return to my former job position/Seeking alternate employment." Ex. 18, *Id*., ECF No. 14-19. Nothing in those statements reasonably alerts the hiring agents to the fact that she had taken FMLA leave. While it may alert them to the fact that she suffers from a disabling condition, that fact is not relevant to the FMLA retaliation inquiry.

In *Edmond v. State of Tennessee Dep't of Prob. & Parole*, 386 F. App'x 507, 516-17 (6th Cir. 2010), the Sixth Circuit confronted a similar situation. In that case, the named plaintiff sued her employer alleging that her supervisors retaliated against her for reporting sexual harassment in the workplace. Edmond had sent a letter to one of her supervisors that alleged that the behavior of another supervisor and some of her employer's management practices were "illegal, arbitrary and capricious." *Id*. at 516. She argued that this letter satisfied her burden of demonstrating that the decisionmaker who discharged her had knowledge of her protected activity.

The Sixth Circuit affirmed the district court's conclusion that the employer did not have knowledge of her protected activity. It held that "[r]eview of the investigative report, however, reveals that there is nothing in the report that would reasonably alert management to any sexual harassment concerns." *Id*. Her letter, despite raising concerns about the behavior of some members of management, did not specifically assert claims of sexual harassment. *Id*. Additionally, the investigation and report produced by her employer as a result of her letter did not touch on and "did not mention sex or sexual harassment." *Id*. at 517.

Edmond argued that there was sufficient evidence in the questions asked of employees during management's investigation to demonstrate they were aware of her sexual harassment allegations, even if not mentioned directly. But the Sixth Circuit explained that while the

- 5 -

questions asked during the investigation "suggest that management knew about allegations of Williams's allegedly aggressive management style" they do not reveal knowledge of Edmond's "claims of sexual harassment." *Id*.

Likewise, here, the language included in Jaskiewicz's applications is sufficient to prove knowledge of the fact that Jaskiewicz had to take a leave of absence. In one of her applications she specifies that the leave was medical. But this is insufficient, without more, to alert those reviewing job applicants for the two positions that Jaskiewicz had taken FMLA leave. At least one applicant reviewer, Ashlee Adelberg, was aware that St. Mary's provided for up to one year of personal leave. Based on the length of the leave taken by Jaskiewicz as indicated by her application, Adelberg would have no reason to conclude that the leave indicated by Jaskiewicz was FMLA leave when the application did not specify that the leave was in part taken under the FMLA. The reviewer of Jaskiewicz's other application was not deposed and there is no evidence that she knew that Jaskiewicz's leave was FMLA related. Reaching the contrary conclusion, that there is a genuine dispute of material fact about whether either reviewer knew her leave was FMLA-related when she can adduce no evidence that they did, is unsupported by Sixth Circuit precedent. To do otherwise would fail to distinguish speculation from evidence.

**B.**

Next, Jaskiewicz argues that the Court erred in concluding that she was not entitled to intermittent FMLA leave. She is correct. The FMLA does permit intermittent leave when necessary "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D)&(b)(1). To the extent the February 8, 2016 Opinion held otherwise, it was in error.

But the primary conclusion of the February 8, 2016 Opinion goes undisturbed: that Jaskiewicz cannot now claim interference with her FMLA rights based on the denial of intermittent leave. Jaskiewicz does not contest that conclusion in her motion for reconsideration. Rather, Jaskiewicz argues that the misinformation regarding FMLA leave was intentionally communicated incorrectly by St. Mary's and that this is evidence of intent to retaliate that bolsters her causation argument.

**1.**

There are two issues raised by this argument. First, as noted above, the decision-makers responsible for the adverse actions taken against Jaskiewicz were not aware of her FMLA leave. For that reason, any intent that Jaskiewicz claims is evident from St. Mary's lying about intermittent leave cannot be imputed to those decision-makers.

Second, nothing in the record supports the claim that St. Mary's intentionally provided Jaskiewicz with misleading information about FMLA leave. Furthermore, nowhere in Jaskiewicz's response brief does she argue that St. Mary's denial of intermittent leave was willfully misleading. She also does not mention intermittent leave anywhere in her response brief when discussing St. Mary's alleged violations of the FMLA. The only time intermittent FMLA leave is even mentioned by Jaskiewicz is in her recitation of relevant facts. But she makes no effort to connect the refusal of intermittent leave by St. Mary's to an FMLA violation or the causal nexus required in establishing a prima facie case of FMLA retaliation. "[I]t is not the district court's duty 'to search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). That duty lies with Jaskiewicz. It is Jaskiewicz's "job to point to the evidence with specificity and particularity in the relevant brief

rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out." *Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (quoting *Wimbush*, 619 F.3d at 639 n.4 (internal quotation marks omitted)). For that reason alone, her argument about intermittent leave need not be considered.

### 2.

Setting aside that issue, Jaskiewicz cannot establish that she was capable of taking intermittent leave. Intermittent leave is available during "absences where the employee . . . is incapacitated or unable to perform the essential functions of the position because of a chronic serious health condition." 29 C.F.R. § 825.202. Jaskiewicz did have such a condition, but with respect to her nursing job, it was totally preclusive of her performing her duties during the period when her doctor placed her on lifting restrictions. Jaskiewicz has not produced evidence that she should have been permitted to return aside from a reference to a nurse named Regina who did not perform patient lifts. But Jaskiewicz has directed the Court to no evidence that that was the result of an accommodation by St. Mary's or simply a handshake arrangement with other nursing staff.

Jaskiewicz has the burden of persuasion to demonstrate that an accommodation existed to allow her to perform the essential functions of her job such that she could take intermittent leave. *Karlik v. Colvin*, 15 F. Supp. 3d 700, 707 (E.D. Mich. 2014). An undeveloped reference to a nurse by the name of Regina does not meet that burden. Jaskiewicz's job description details numerous duties of lifting, pushing, and transferring patients. Ex. 3, Pl.'s Resp., ECF No. 14-4. The mere fact that it does not state with specificity that lifts, pushes, and transfers will require moving more than twenty pounds at a time is unavailing. It is unreasonable to assume that patients will weigh less than twenty pounds or that enough nurses would participate in each lift

that Jaskiewicz would never need to move more than twenty pounds at a time. Because Jaskiewicz cannot demonstrate that she could have performed the duties of her job with the restrictions imposed by her doctor, intermittent leave would have been unhelpful to her.

**3.**

But even if it is assumed that St. Mary's denial of intermittent leave was willfully misleading because Jaskiewicz could have taken intermittent leave, and that Jaskiewicz had properly argued as much, her argument still goes nowhere. She would be left with only one option: that St. Mary's lied to her about intermittent FMLA leave in order to force her to apply for jobs that she would not qualify for and that she would ultimately be forced to exhaust her leave and then be fired. That is the "cat's paw" theory of retaliation.

Under this theory "a plaintiff can show discrimination by offering evidence of a 'causal nexus' between the ultimate decisionmaker's decision to [discipline] the plaintiff and the supervisor's discriminatory animus." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350 (6th Cir. 2012) (internal quotation marks omitted). The Supreme Court discussed this theory of liability in *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011). The Sixth Circuit explained this discussion as follows:

> The *Staub* Court defined cat's paw liability as follows: "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and that if that act is a proximate cause of the ultimate employment action, then the employer is liable under the [Act]." *Id.* at 1194 (emphasis in original). The Court relied on principles of agency and tort law to impute a lower-level supervisor's discriminatory animus to an otherwise unbiased decisionmaker, thereby rendering the employer liable for the non-decisionmaker's discrimination. *Id.* at 1191–92. If the decisionmaker undertakes an investigation which results in an adverse action for reasons unrelated to the supervisor's original biased action, the employer will not be liable. *Id.* at 1193. However, "the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* (emphasis added).

- 9 -

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012).

Jaskiewicz has not provided evidence in support of this theory of retaliation. "Plaintiff must establish two elements for cat's paw liability to apply: (1) that [the supervisor that denied her intermittent leave] intended to cause an adverse employment action for discriminatory purposes; and (2) that these discriminatory actions were the proximate cause of the ultimate employment action." *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 955-56 (6th Cir. 2014). She cannot meet this standard. First, her only evidence in support of her claim that St. Mary's action was intentionally discriminatory is that Kelly Weigold, the Manager of Associate Health and Wellness, gave her incorrect information about her ability to take FMLA leave. But no other evidence is offered to explain how this was "intended to cause an adverse employment action for discriminatory purposes." Jaskiewicz was given a full twelve weeks of FMLA leave and during that time, her condition only grew more restrictive, to the point that she herself admitted in her applications for other positions that she could only work eight hour days. Her prior position required twelve hour shifts.

Additionally, and as already discussed, there is no evidence that the two hiring agents were at all aware of her FMLA leave. At least one hiring agent selected an individual she believed to be more qualified than Jaskiewicz while also testifying that Jaskiewicz was not qualified for the position at all. The second hiring agent, while offering a poor justification for not considering Jaskiewicz, could not be said to have any knowledge of her FMLA-protected activity. While that hiring agent, Ms. Adelberg, likely should have been aware that Jaskiewicz was suffering from some sort of disabling condition, no nexus to FMLA leave can be established. In particular, and of significant importance for the cat's paw theory, even if either hiring agent knew of Jaskiewicz's FMLA leave (and, as explained before, there is no evidence

that they did) there is no connection to Ms. Weigold's denial of intermittent leave. The lack of any connection whatsoever between the denial of intermittent leave and St. Mary's failure to hire Jaskiewicz for the two positions she applied for is fatal to her retaliation claim.

Lastly, the cat's paw theory also does not apply to Jaskiewicz's termination. Assuming that Ms. Weigold denied Jaskiewicz intermittent leave in order to force her to more quickly exhaust her one year of personal leave leading to her termination, Jaskiewicz's claim still does not succeed. This is so because Jaskiewicz cannot establish that she was able to return to her nursing position despite her restrictions and thus avail herself of intermittent leave. *See supra* § III.B.2. Furthermore, there reached a point in time when Jaskiewicz was also restricted from working more than eight hours per day. Her position required twelve hour shifts. There is no requirement under the FMLA to restore a plaintiff to a prior position if the plaintiff cannot perform the essential functions of that job. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999). Jaskiewicz reached a point where she could no longer perform two of the essential functions of her job: lift, push, and transfer patients; and work a twelve hour shift. Unable to locate a new job, her employment was terminated, but not in violation of the FMLA.

## IV.

Accordingly, it is **ORDERED** that Plaintiff Mary Jo Jaskiewicz's Motion for Reconsideration, ECF No. 21, is **DENIED**.

Dated: February 17, 2016                          s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 17, 2016.

s/Johnetta Curry
JOHNETTA CURRY
Acting Case Manager